**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Azizbek Kuvonchbek Ugli Urinboev, | No. CV-26-00488-PHX-AMM (MTM) |
| Petitioner, | **ORDER** |
| v. | |
| David R Rivas, et al., | |
| Respondents. | |

Self-represented Petitioner Azizbek Kuvonchbek Ugli Urinboev filed this action under 28 U.S.C. § 2241 challenging his immigration detention. (Doc. 1.) Respondents answered the Petition, and the time for Petitioner to reply has passed. (*See* Docs. 3, 6.) Upon review of the briefing, the Court will grant the Petition and order Respondents to immediately release Petitioner.

## I.     BACKGROUND.

Petitioner is a native and citizen of Uzbekistan. (Doc. 6 at 1.) On October 15, 2023, Petitioner was detained while attempting to enter the United States without proper documentation. (*Id.*) On the same day, Petitioner was served with a notice and order of expedited removal, charging Petitioner as removable under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I)—codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I).[1] (*Id.*)

On November 28, 2023, Petitioner was issued a Notice to Appear after an asylum

---

[1] This provision states that an immigrant "who is not in possession of a . . . valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required . . . is inadmissible." 8 U.S.C. § 1182(a)(7)(A)(i)(I)–(II).

officer established a positive finding of credible fear. (*Id.*) On December 22, 2023, Petitioner was subsequently released from immigration detention pursuant to humanitarian parole under 8 U.S.C. § 1182(d)(5). (*Id.*; Doc. 6-2 at 2.)

Thereafter, on September 8, 2025, Petitioner was re-detained by Immigration and Customs Enforcement ("ICE"). (Doc. 6 at 2.)

On January 16, 2026, Petitioner filed the present Petition.[2] (Doc. 1.) In his Petition, Petitioner asserts that: (1) Respondents have misclassified him under 8 U.S.C. § 1225(b); and (2) his current immigration detention violates the Fifth Amendment. (Doc. 11.)

## II.   DISCUSSION.

The Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is well established that the Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Court's due process analysis is separated into two steps: first, courts consider "whether there exists a liberty or property interest of which a person has been deprived, and if so," courts ask "whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

### A. Statutory Classification and Corresponding Liberty Interest.

"A noncitizen's place 'within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.'" *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008)). Petitioner asserts that his continued detention is pursuant to 8 U.S.C. § 1226, and that he is thus entitled to a bond hearing. (Doc. 11 at 6). Respondents assert that Petitioner is subject

---

[2] On February 27, 2026, Petitioner filed an Amended Petition. (Doc. 11.) The Court found Petitioner's Amended Petition is essentially identical to his original Petition, except that Petitioner omits ICE Field Office Director Gregory J. Archambeault as a Respondent. (*See* Doc. 14 at 1.) Because Petitioner did not raise any new claims with respect to his immigration detention, and because Respondents answered the original Petition, the Court ordered that Respondents were not required to respond to the Amended Petition. (*Id.*)

to mandatory detention under 8 U.S.C. § 1225. (Doc. 6 at 2–4.) On this matter, the Court agrees with Respondents.

Here, Petitioner was granted humanitarian parole under 8 U.S.C. § 1182(d)(5). Because Petitioner was released upon humanitarian parole, he is properly classified under 8 U.S.C. § 1225(b)(2). *Mohammadi v. Noem*, No. 2:26-cv-00032-GMN-EJY, 2026 U.S. Dist. LEXIS 27013, at *6 (D. Nev. Feb. 9, 2026) (noting that a petitioner released upon 8 U.S.C. § 1182(d)(5) remains classified "under § 1225(b)(2), not § 1226(a)"); *Musaev v. Hermosillo*, No. 2:26-cv-00522-RAJ, 2026 U.S. Dist. LEXIS 75938, at *9–10 (W.D. Wash. Apr. 6, 2026) (finding that a noncitizen detained pursuant to 8 U.S.C. § 1225(b) and released upon 8 U.S.C. § 1182(d)(5) humanitarian parole is "subject to Section 1225(b)'s mandatory detention scheme upon the termination of his parole").

Although Petitioner may be properly subject to potential detention under 8 U.S.C. § 1225(b)(2), this finding "'does not obviate Respondents' obligation to comply with due process' in re-detaining Petitioner." *Id.* at *10 (quoting *Telenchana v. Hermosillo*, No. 2:26-cv-00363-GJL, 2026 U.S. Dist. LEXIS 51425, at *29 (W.D. Wash. Mar. 12, 2026)). Rather, recent caselaw confirms that an immigration detainee released on parole retains a liberty interest in his release and that "liberty interest [does] not expire along with his parole." *Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, at *4 (D. Ariz. Mar. 9, 2026) (quoting *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025)); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted . . . . That the express terms of the [§ 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a[n] individualized bond hearing prior to re-detaining the parolee."); *Mody v. Warden*, No. 25-cv-03400-FMO, 2026 WL 51976, at *6–8 (C.D. Cal. Jan. 5, 2026) (issuing temporary restraining order where petitioner had been re-detained following expiration of his § 1182

parole); *Quiroga-Chaparro v. Warden of the Golden State Annex Detention Fac.*, No. 25-cv-01731-AC, 2025 WL 3771473, at *4–7 (E.D. Cal. Dec. 31, 2025) (same); *Tesara v. Wamsley*, No. 2:25-cv-01723-KKE-TLF, 2025 WL 3288295, at *4 (W.D. Wash. Nov. 25, 2025) (directing immigration detainee's immediate release after he was re-detained following his parole's expiration, stating petitioner's "interest in his freedom is constitutionally protected" and that "the Government exercises discretion in determining whether to grant parole or extend it upon its expiration does not eliminate the protections afforded to Petitioner's liberty interest").

The applicable regulations also provide that if a non-citizen is re-detained after § 1182 parole expires, they "shall again be released on parole" if their "exclusion, deportation, or removal order cannot be executed within a reasonable time." 8 C.F.R. § 212.5(e)(2)(i); *D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP (HC), 2026 U.S. Dist. LEXIS 10287, at *9–10 (E.D. Cal. Jan. 20, 2026) ("Indeed, the applicable regulations state that if a non-citizen is re-detained after § 1182 parole expires, they 'shall again be released on parole' if their 'exclusion, deportation, or removal order cannot be executed within a reasonable time.'") (citing § 212.5(e)(1), (e)(2)(i)). Although it is unclear from the records provided whether Petitioner's parole had expired by the time he was re-detained, because no evidence has been presented to support that Petitioner's deportation is likely to occur within a reasonable time, Petitioner has a liberty interest in his release.

**B. Proper Procedural Process**.

Because Petitioner has a liberty interest in his release, the Court must now determine what procedures are required to overcome that interest. To do so, the Court applies the three-part *Mathews v. Eldridge* test. 424 U.S. 319 (1976). Under the *Mathews* test, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the

additional or substitute procedural requirement would entail. *Id.* at 335.

As to the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.")); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."); *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government. '[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987))); *cf. Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008))). This factor favors Petitioner.

Turning to the second factor, "[w]here an individual has not received a bond or redetermination hearing, the risk of an erroneous deprivation [of liberty] is high." *Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 U.S. Dist. LEXIS 179594, at \*33 (N.D. Cal. Sep. 12, 2025) (citation omitted). The Court concludes there is a significant risk of erroneous deprivation where a bond or redetermination hearing has not been performed. Therefore, this factor favors Petitioner as well.

Finally, as to the third *Mathews* factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose

"minimal" cost and effort. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal., 2025); *Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."). In any event, "[d]etention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025). This factor weighs in Petitioner's favor.

The Court therefore finds that the *Mathews* factors weigh in favor of finding that Petitioner was entitled to a hearing before he was re-detained and placed in DHS custody. Accordingly, the Court will direct Respondents to release Petitioner immediately. *See* 8 C.F.R. § 212.5(e)(2)(i); *see also Singh v. Unknown Party*, No. CV-26-00483-PHX-JCH (CDB), 2026 U.S. Dist. LEXIS 61597, at *9 (D. Ariz. Mar. 24, 2026) ("The Court finds that immediate release, rather than requiring another bond hearing, is the appropriate remedy.").

Accordingly,

**IT IS ORDERED**:

(1) Petitioner's Amended Petition for Writ of Habeas Corpus is **GRANTED**. (Doc. 11.)

(2) Respondents must **IMMEDIATELY RELEASE** Petitioner from custody under the same conditions that existed before his re-detention.

(3) Respondents shall provide a Notice of Compliance within **THREE (3) BUSINESS DAYS** of Petitioner's release.

Dated this 21st day of May, 2026.

_____
Honorable Angela M. Martinez
United States District Judge